IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | **Criminal Case No. 1:90cr348** |
| ) | |
| **XIAMARO E. HERNANDEZ,** ) | |
| ) | |
| **Defendant.** ) | |

# ORDER

Almost eleven years after her final appeal was denied, defendant Xiamaro E. Hernandez, a federal inmate, filed this *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, arguing that the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005) should be applied retroactively to invalidate her sentence and require that she be re-sentenced under the post-*Booker* advisory Sentencing Guidelines regime.[1] Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.[2] For the reasons stated below, it is clear that the rule announced in *Booker* does not apply retroactively to cases already final on direct appeal and, therefore, that petitioner's claim is time-barred.

---

[1] In *Booker*, the Supreme Court applied its *Apprendi* line of decisions to hold that the United States Sentencing Guidelines violated the Sixth Amendment to the extent that they allowed a defendant's sentence to be increased based on findings of fact made by a judge (other than a prior conviction) rather than by a jury beyond a reasonable doubt, and that the proper remedy was to render the Sentencing Guidelines advisory. *See* 125 S. Ct. at 755-56, 56-67; *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

[2] *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required ... on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

I.

In December 1990, a grand jury sitting in the Eastern District of Virginia named Hernandez in one count of a three-count superseding indictment charging conspiracy (i) to distribute cocaine; (ii) to possess with the intent to distribute cocaine; (iii) to distribute 50 grams or more of cocaine base; and (iv) to possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (1988).  Hernandez was tried by a jury with two of her co-conspirators.  At the trial, Hernandez took the stand to testify in her own defense.  On March 27, 1991, the jury acquitted one of the co-defendants, but convicted Hernandez and her other co-defendant of conspiring to distribute and to possess with intent to distribute cocaine and crack cocaine.  On May 24, 1991, Hernandez was sentenced to 235 months imprisonment, five years of supervised release, and a $50 special assessment.  *See United States v. Hernandez*, Criminal No. 1:90cr348 (E.D. Va. May 24, 1991) (Bryan, J.) (Judgment).  Hernandez appealed her conviction, arguing that the district court had erred by admitting evidence of prior bad acts or crimes prohibited by Rule 404(b), Fed. R. Evid., that were in no way connected to the conspiracy.  The Fourth Circuit agreed that the district court had erred by admitting the evidence, vacated defendant's conviction, and remanded for a new trial.  *See United States v. Hernandez*, 975 F.2d 1035 (4th Cir. 1992).

On February 9, 1993, following a second jury trial,[3] Hernandez was again convicted of conspiring to distribute and to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846.  Notably, the jury verdict form did not require the jury to identify a specific drug quantity for which it found Hernandez responsible.  At the second sentencing, the sentencing judge adopted the findings and conclusions of the Presentence Investigation Report

---

[3] Hernandez did not testify at her second trial.

2

("PSIR"), including a finding that slightly more than 1,300 grams of cocaine base were attributable to Hernandez for her involvement in the conspiracy. At the time, neither party objected to these findings. On collateral attack, Hernandez now contests this amount and argues that trial counsel was ineffective in failing to object to these findings at sentencing. Specifically, she argues that the evidence presented at trial and referenced in the PSIR supported, at most, a total quantity of approximately 450 grams of crack cocaine.[4]

At sentencing, the sentencing judge adopted the PSIR's findings and conclusions and determined, as then required, Hernandez's sentencing range pursuant to the United States Sentencing Guidelines. Specifically, she was assigned a base-offense level of 36, based on a finding of responsibility for between 500 grams and 1.5 kilograms of crack cocaine, which was further increased by two levels for an obstruction of justice enhancement (i) for perjury stemming from her testimony at her first trial and (ii) for offering to pay for an attorney for one of her co-conspirators if he told the police that the drugs were all his. *See* U.S.S.G. § 3C1.1. Defendant raised no objection to these Sentencing Guidelines determinations.[5] Thereafter, Hernandez was again sentenced to 235 months imprisonment, a sentence at the low end of the applicable Guidelines range, five years supervised release, and a $50 special assessment. *See United States v. Hernandez*, Criminal No. 1:90cr348 (E.D. Va. May 24, 1991) (Ellis, J.) (Judgment). At the

---

[4] Hernandez challenges the calculations in the PSIR, including its finding of responsibility for one kilogram of cocaine that Hernandez offered to obtain and transfer from New York in exchange for $500 from a co-conspirator. The record reflects that after making this offer, Hernandez claimed to have returned from New York with only 14 ounces of crack, and then sold only 9 ounces (or approximately 248 grams) to an undercover agent. Nevertheless, the PSIR calculations included a finding of responsibility for the both the solicitation to transport the kilogram of cocaine in exchange for payment, and the 248 grams sold to the undercover agent.

[5] Nor did she object to the calculation of her sentence at her first sentencing, where the sentencing judge adopted the same 235-month sentence based on the same sentencing factors.

time of the second sentencing, the sentencing judge noted that the sentence was "severe under the circumstances" and that the goals of deterrence, retribution, and compensation could have been served with much less time, but that the law compelled a sentence of 235 months.

Hernandez appealed her sentence and conviction to the Fourth Circuit, raising only one issue on appeal: that the district court abused its discretion when it admitted the testimony of a government witness concerning the circumstances surrounding her arrest. The Fourth Circuit affirmed Hernandez's sentence and conviction on February 8, 1994 by unpublished opinion. *See United States v. Hernandez*, 16 F.3d 412, 1994 U.S. App. LEXIS 2018 (4th Cir. 1994). No petition for certiorari was filed. Nor did defendant ever seek habeas review prior to filing the instant motion.

Following the Supreme Court's decision in *United States v. Booker*, defendant filed this *pro se* motion to vacate, set aside, or correct sentence, arguing that the Supreme Court's ruling should be applied retroactively to invalidate her sentence. Counsel was appointed to represent Hernandez in her § 2255 motion and, with the services of newly-appointed counsel, she filed a memorandum in support of her § 2255 motion on March 25, 2005. In that memorandum, defendant raises two grounds for relief: (i) that her sentence violates the Fifth and Sixth Amendments to the Constitution because it was based on facts not proven to a jury beyond a reasonable doubt and was imposed under an unconstitutional sentencing scheme, as reflected by the Supreme Court's decisions in *Booker* and *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and (ii) that her counsel performed ineffectively (a) by failing to raise a *Booker*-like challenge to her sentence and (b) by failing to object to the sentence imposed, which relied on a drug weight allegedly unsupported by the facts in the record. The matter has been fully briefed and is ripe for disposition. For the reasons set forth below, the motion must be denied.

II.

Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA") in 1996, which established a one-year period of limitation in which a prisoner may file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides, in relevant part, that the one-year period of limitation runs from the latest of

> (1) the date on which the judgment of conviction becomes final; [or]
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized and made retroactively applicable to cases on collateral review.

28 U.S.C. § 2255.[6] Although Hernandez's conviction became final long before the AEDPA was enacted, at a time when no time limitation applied to a federal prisoner's ability to bring a § 2255 motion,[7] Hernandez's motion does not escape the application of the time-bar. Where, as here, a prisoner's conviction becomes final prior to the effective date of the AEDPA on April 23, 1996, § 2255's time limitation still applies as of April 23, 1997, one year after the date of the AEDPA's effective date. *See Brown*, 150 F.3d at 375-76. Thus, in an attempt to overcome the time-bar, Hernandez relies on § 2255, paragraph 6(3), to argue that the Supreme Court's rulings in *Booker* and *Blakely*, "newly recognized" a right that has been "made retroactively applicable to cases on collateral review" and, therefore, that a new one-year period commenced to run on January 12, 2005, the date *Booker* was decided. 28 U.S.C. § 2255 para. 6(3). This argument is not

---

[6] The remaining two provisions of the one-year limitation are not relevant here. Those provisions state that the one-year limitation may also commence to run on the latest of (i) the date a government-created impediment that unconstitutionally or unlawfully prevented defendant from bringing his motion is removed, or (ii) the date new supporting facts are discovered that could not have been previously discovered with due diligence. *See* 28 U.S.C. § 2255 para. 6(2), (4).

[7] *See Brown v. Angelone*, 150 F.3d 370, 371 (4th Cir. 1998) ("Prior to the enactment of the AEDPA, no statute limited the time available for a prisoner to file a habeas petition.").

persuasive. While the Fourth Circuit has not yet decided the issue,[8] all circuits to address the issue, as well as other courts in this district, have concluded that *Booker* does not apply retroactively to cases on collateral review.[9] Indeed, no published federal decision has been found to the contrary. Because there appears to be no reason to dissent from the reasoned opinions of these other courts, it is necessary to recite only briefly here the principles that compel this conclusion.

The principles that govern the retroactive application of new rules on collateral review are well established by *Teague v. Lane*, 489 U.S. 288 (1989) and its progeny. The analysis requires a three-step process. First, the court must determine the date on which the defendant's conviction became final. *See Beard v. Banks*, 124 S. Ct. 2504, 2510 (2004). Next, the court must survey the "legal landscape" as it existed at the time the defendant's conviction became final to determine whether the rule is a "new" rule. *Id.* (citing *Graham v. Collins*, 506 U.S. 461, 468 (1993)). And finally, even if the rule is new, it does not apply retroactively unless it falls under one of two exceptions: it must be either a (i) substantive rule[10] or (ii) a "watershed rule[] of

---

[8] *Cf. United States v. Beatty*, 103 Fed. Appx. 785, 785 (4th Cir. 2004) (unpublished disposition) (brief statement, without explanation, to the effect that the Supreme Court's decision in *Blakely* does not apply retroactively to the § 2255 context).

[9] *See Lloyd v. United States*, 2005 U.S. App. LEXIS 8699 (3d Cir. 2005); *Guzman v. United States*, 404 F.3d 139 (2d Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 497 (7th Cir. 2005); *see also, e.g.*, *United States v. Johnson*, 353 F. Supp. 2d 656 (E.D. Va. 2005) (Smith, J.); *United States v. Hepburn*, 2005 U.S. Dist. LEXIS 8135 (E.D. Va. 2005) (Brinkema, J.); *Arnette v. United States*, 2005 U.S. Dist. LEXIS 7734 (E.D. Va. 2005) (Friedman, J.).

[10] The Supreme Court has recently made clear that those rules that fall within what has often been referred to as *Teague*'s first exception "are more accurately characterized as substantive rules not subject to *Teague*'s bar." *Beard*, 124 S. Ct. at 2510 n.3 (quoting *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004)). The first *Teague* exception has typically been described as applying to rules forbidding punishment "of certain primary conduct [or] rules prohibiting a

criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 2513 (citation omitted).

These principles applied here compel the conclusion that *Booker* should not be applied retroactively. First, the date on which Hernandez's conviction became final was May 7, 1993, the expiration of the 90-day period in which Hernandez could have petitioned the Supreme Court for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 524 (2003) (holding that one-year limitation allotted to petitioner commenced to run when time for seeking writ of certiorari from the Supreme Court on direct review expired).

Next, to determine whether the rule announced by the Supreme Court in *Booker* is "new," it is necessary to examine the "legal landscape" as it existed on that date, *i.e.* May 7, 1993, to see if the rule "was *dictated* by then-existing precedent – whether, that is, the unlawfulness of respondent's [sentence] was apparent to all reasonable jurists." *Beard*, 124 S. Ct. at 2511 (internal quotations and citations omitted) (emphasis in original). The parties do not dispute that the rule announced in *Booker* is a "new rule" for the purposes of § 2255 retroactivity analysis. Nor is there any question that this is the correct conclusion as the sentencing procedure now required by *Booker* clearly was not dictated by existing precedent at the time Hernandez's conviction became final, for indeed, the Supreme Court had not even decided *Apprendi* at that time, and *Apprendi* repeatedly has been held to have announced a new rule. *See, e.g.*, *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (holding that *Apprendi* announced a new rule that any factor which increased the maximum punishment for an offense must be found by a jury beyond a reasonable doubt). Moreover, even if Hernandez's conviction had become final

---

certain category of punishment for a class of defendants because of their status or offense." *Beard*, 124 S. Ct. at 2513 (internal quotations and citation omitted).

post-*Apprendi* or even post-*Blakely*, *Booker* still announced a "new rule" as it was not "apparent to all reasonable jurists" that the rationale applied in *Apprendi* and *Blakely* would be extended to invalidate the Federal Sentencing Guidelines. *See, e.g.*, *Guzman*, 404 F.3d at 142 ("It cannot be said that the result in *Booker* was apparent to 'all reasonable jurists.'"); *Humphress*, 398 F.3d at 861 (noting that federal courts were deeply divided post-*Blakely* regarding whether *Blakely*'s rationale applied to the federal system). Thus, it is clear that the Supreme Court in *Booker* announced a new rule that was not dictated by pre-existing precedent at any time before *Booker* was decided, including at the time when Hernandez's conviction became final.

Finally, it is necessary to determine whether one of the two *Teague* exceptions applies. First, the parties do not dispute that no new substantive rule was announced in *Booker* and the Supreme Court has made clear that the *Apprendi* line of cases, of which *Booker* is a part, have announced new procedural rules, not substantive ones.[11] Thus, the first *Teague* exception for substantive rules does not apply.

Instead, Hernandez argues that the second exception for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" applies. *Beard*, 124 S. Ct. at 2513. Yet, courts have consistently rejected the argument that the *Apprendi* line of cases have announced new watershed rules of criminal procedure. Circuit courts, including the Fourth Circuit, have uniformly held that *Apprendi*'s rule does not fall within the "watershed" exception.[12] And the Supreme Court's recent decision in *Summerlin*, as the Seventh

---

[11] *See Summerlin*, 124 S. Ct. at 2523-24 (holding that rules that allocate decisionmaking authority to jury rather than a judge "are prototypical procedural rules"); *see also Sanders*, 247 F.3d at 147 (holding that *Apprendi*, which required aggravating sentencing factors to be proved to a jury instead of a judge, announced a procedural rule, not a substantive one).

[12] *See, e.g.*, *Sanders*, 247 F.3d 139; *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003); *Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003); *Coleman v. United States*, 329

Circuit recognized, is "all but conclusive on the point." *McReynolds*, 397 F.3d at 480. In *Summerlin*, the Supreme Court rejected the argument that the Supreme Court's decision in *Ring v. Arizona*, 124 S. Ct. 2519 (2002), was a watershed change. *Ring* applied *Apprendi*'s principles to hold that a defendant is entitled to a jury finding beyond a reasonable doubt on all aggravating factors that may lead to the imposition of the death penalty. *See id.* at 2522. As the Supreme Court reasoned in *Summerlin*, *Ring*'s holding was not a watershed change "without which the likelihood of an accurate conviction is *seriously* diminished" because it was "implausible that judicial factfinding so seriously diminishes accuracy as to produce an impermissibly large risk of injustice." *See Summerlin*, 124 S. Ct. at 2525 (citing *Teague*, 489 U.S. at 313). The Court's reasoning applies with even greater force to the rule announced in *Booker*. As the Seventh Circuit has reasoned, in the end, the Supreme Court's decision in *Booker* does not move any decision from the judge to the jury or change the burden of persuasion. *See McReynolds*, 397 F.3d 481. Instead, the "only change [is] the degree of flexibility judges ... enjoy in applying the guideline system." *Id.* This is not a "watershed" change that fundamentally improves the accuracy of the criminal process.

Accordingly, the rule announced in *Booker* does not apply retroactively to those bringing claims on collateral attack. It follows, therefore, that Hernandez's first claim fails to overcome § 2255's one-year time bar.

III.

Similarly, Hernandez's ineffective assistance of counsel claims are also time-barred. As with her *Booker* claim, Hernandez fails to identify any applicable exception to save her ineffective assistance claims from § 2255's one-year limitation. Thus, these claims also fail.

---

F.3d 77 (2d Cir. 2003); *United States v. Brown*, 305 F.3d 304 (5th Cir. 2002).

Specifically, Hernandez argues that her counsel was ineffective in that her attorney (i) failed to raise a *Booker*-like challenge at the time of her sentencing, and (ii) failed to challenge the PSIR's drug weight finding, which attributed more than 1,300 grams of crack cocaine to her, when, she argues, the evidence presented to the jury and recounted in the PSIR supported a finding of no more than 450 grams.  Regarding her second ineffective assistance claim, Hernandez argues that her sentencing counsel's failure to object to the drug weight figure resulted in a finding of responsibility for between 500 grams and 1.5 kilograms (and a base offense level of 36 instead of 34), thus significantly extending her sentence.

A two-prong test applies to ineffective assistance of counsel claims.  *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).  A defendant must show (1) that her counsel's performance "fell below an objective standard of reasonableness," and (2) that "the deficient performance prejudiced the defense." *Id.*

If Hernandez's first claim were not time-barred, it would plainly fail on the first prong of the *Strickland* analysis.  Defense counsel's performance at sentencing did not fall below an objective standard of reasonableness by failing to raise a *Booker*-like argument because the reasoning ultimately adopted in *Booker* was never anticipated by most competent counsel or jurists.[13]  Thus, counsel did not act unreasonably by failing to raise it.

It is unclear whether Hernandez could have prevailed on her second ineffective assistance claim had it been timely asserted.  But it is worth noting that even assuming, *arguendo*, that sentencing counsel's performance fell below an objective standard of reasonableness by failing to object to, what Hernandez contends, is an erroneous drug weight finding in the PSIR, Hernandez

---

[13] *See Engle v. Isaac*, 456 U.S. 107, 133-34 (1982) ("[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.")).

10

would still need to satisfy *Strickland*'s second prong, namely prejudice to her defense. To establish prejudice, she would need to demonstrate that her objection to the drug weight calculation, if raised, would have been granted. In other words, she would need to show that the PSIR calculations were, in fact, unsupported by the evidence.[14] It is unclear on this record whether defendant would succeed in this regard. In any event, it is unnecessary to reach this issue here because Hernandez's claim is time-barred by § 2255's one-year statute of limitations.

For good cause shown and for the reasons stated,

It is **ORDERED** that petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia  
May 24, 2005

                 /s/  
T.S. Ellis, III  
United States District Judge

---

[14] *See supra* note 4.